CHARLES R. EARLE, Trustee, *vs.* NATHANIEL GRANT *et als.*

Statement of the legal rules governing the action of a pledgee who forecloses without legal process.

These rules may be waived by the pledgor, and a violation of them cured by the pledgor's ratification.

Hence, when it appeared that a pledgor had by parol abandoned the pledge to the pledgee, was present at the sale of the pledge, which had been advertised at "public auction," and with full knowledge made a bid for it, and ratified the sale by drinking with the pledgee and the purchaser in celebration of the sale, and that the sale took place in a room which, though not usually open to the public, was so open when the sale occurred:

On a bill to redeem filed four years after the sale:

*Held,* that the complainant pledgor could not have relief.

*Held,* further, that the omission of the names of the pledgor and pledgee from the advertisement of sale was immaterial, the pledge being stock in a local corporation.

The purchaser never paid for the stock, and soon after the sale transferred it to the pledgee.

*Held,* that this questionable conduct would not in the circumstances sustain the bill, the purchaser and the pledgee both swearing that there was no previous understanding between them, and their veracity being unimpeached.

BILL IN EQUITY to redeem a pledge.

*July* 14, 1883. DURFEE, C. J. This is a bill to avoid the sale of a pledge and to redeem it on the ground that the sale, which was a non judicial sale for the default of the pledgor, was void. The pledge consisted of thirty two shares of the capital stock of the American Ship Windlass Company, held to secure the note of the pledgor for $1,600 money lent. The shares were sold in the rooms of the Board of Trade, in Providence, after advertisement in the "Providence Journal," a daily newspaper published in said city. The complainant seeks to avoid the sale and redeem the pledge on the grounds, among other grounds: *first*, that no demand was made on the pledgor for the payment of the note before the sale; *second*, that the pledgee did not give the pledgor any notice of the time and place of the sale; and *third*, that the sale was not at public auction.

The law in regard to foreclosure by non judicial sale for default requires the pledgee to give the pledgor due notice, before sale, that he intends to sell at a certain time and place, unless the pledgor redeems, and, if a previous demand of payment be necessary to put the pledgor in default, to make the demand. The sale also must be at public auction. These rules, however, are not absolutely inflexible, but being designed for the benefit of the

pledgor may be varied by contract when the pledge is given, or waived by the pledgor afterwards. Moreover, defects in the sale as to notice or publicity may be cured by subsequent conduct on the part of the pledgor amounting to ratification. Schouler on Bailments, 207–209.

In the case at bar we are satisfied that the pledgor was spoken to about the note after its maturity, and asked in effect, if not formally, to pay it, and that he told the pledgee that the stock was his and he could do as he pleased with it. The sale was, therefore, without fault so far as the first objection is concerned. As to the second objection, we do not find that the pledgee notified the pledgor of the time and place of the sale, but the pledgor saw the advertisement and attended the sale, and though he may not have had positive knowledge that the shares were his, we are convinced that in his own mind he had no doubt of it. He did not object to the sale; on the contrary, he made a bid for the stock. Formal notice of the time and place of sale is not indispensable, if the pledgor have actual and reasonable knowledge thereof. Schouler on Bailments, 207. After the sale the pledgor was present with the pledgee and the purchaser when the purchaser paid the pledgee a dollar on account of the purchase, and joined with them in drinking in celebration of it. Of course he knew then, if not before, what stock had been sold, and as he made no objection then to the sale, we think he must be held to have ratified it. And as to the third objection, that the sale was not a public auction sale, the ground of the objection is, that the rooms of the Board of Trade, where the sale was made, are not rooms which are generally open to the public, but only to members of the Board and their invited friends. We do not think the objection can be sustained, for the evidence shows that the sale was permitted by the Board of Trade, that such sales had frequently taken place there, and that the room, though not ordinarily open to the public, was open to the public when the sale occurred. The sale was advertised as a sale at "public auction," and under such an advertisement any person who had a desire to attend would consider himself invited to attend. Such a sale is very different from a sale at the Brokers' Board in New York, where none but members of the board are permitted to bid.

The complainant also seeks to avoid the sale because the advertisement, in advertising the shares for sale, did not name either the pledgor or the pledgee. It does not appear that it is customary to give names in such advertisements. No case is cited which holds that it is necessary to give them. We can conceive that if a pledge were a valuable work of art, or some article of taste which would not be likely to command its proper price without previous inspection, it would be the duty of the pledgee to put it on exhibition before sale and advertise where it could be seen· But we do not think that kind of care is necessary in a sale of stocks. The American Ship Windlass Company was a Providence corporation, and therefore persons desirous of buying the stock could inform themselves in regard to its value by inquiry. It is not usual to examine the title to stock before purchasing, the certificate of the corporation being regarded as sufficient proof of it.

Finally, the complainant seeks to avoid the sale and redeem on the ground that the sale was virtually a sale by the pledgee to himself, the purchaser having bought the stock for him as his agent. The testimony shows that the purchaser never paid for the stock, and that he transferred it, soon after it was conveyed to him, to the pledgee. The transaction is certainly very suspicious. But the purchaser and pledgee both testify that the purchaser was not employed to buy for the pledgee, there being no previous understanding between them, and we are not prepared to disbelieve them, their veracity being unimpeached. The sale took place December 26, 1878. This suit was not commenced until December, 1882. After so long a delay the complainant ought to make out a clear case before he has the sale set aside. ·

The bill is dismissed with costs. *Decree accordingly.*

*Charles E. Gorman,* for complainant.

*Nicholas Van Slyck,* for respondents.